UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO: 3:08-CV-149-RJC-DCK

| | |
|---|---|
| DIAGNOSTIC DEVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | MEMORANDUM AND |
| PHARMA SUPPLY, INC. et al, ) | RECOMMENDATION |
| ) | |
| Defendants. ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Motion to Dismiss the Complaint" (Document No. 4) filed by the Defendant Frank P. Suess. The Plaintiff opposes the motion. This matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. §636(b), and is ripe for consideration. Having carefully considered the record, including the motion, response, and reply (Document Nos. 4, 15, 21), the undersigned Magistrate Judge recommends that the motion be **granted in part** and **denied in part**, and makes the following proposed findings of fact and conclusions law:

### I. Background and Procedural History

On March 5, 2008, Plaintiff Diagnostic Devices, Inc. ("DDI") filed a complaint against five Defendants, 1) Pharma Supply, Inc. ("Pharma"), 2) National Home Respiratory Service, Inc. d/b/a Diabetic Support Program, 3) Frank P. Suess, 4) Diabetic Supply of Suncoast, Inc. ("Diabetic Supply"), and 5) Dan Dennis, in Mecklenburg County Superior Court, Case No. 08-CVS-4628. (Document No. 1-2). Frank Suess is a corporate officer of both Pharma and the Diabetic Support Program. Dan Dennis is a corporate officer of Diabetic Supply.

The Plaintiff's complaint asserts claims under the headings of "Tortious Interference with Contractual Relations with Taidoc," "Tortious Interference with Prospective Advantage," "Unfair Competition," "Defamation," and "Slander *per se.*" Plaintiff requests injunctive relief and damages.[1]

On April 4, 2008, the case was timely removed to the United States District Court for the Western District of North Carolina. Upon removal, Frank Suess moved to dismiss the claims against him pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Document No. 4). Plaintiff sought, and was granted, permission to take limited discovery regarding the issue of personal jurisdiction of this party. Upon motion, the parties were subsequently given additional time to conduct discovery on this issue.

On October 14, 2008, Frank Suess filed a "Stipulation of Personal Jurisdiction and Consent Motion to Allow Amendment to Motion to Dismiss" (Document No. 35). Through counsel, he agreed to stipulate to personal jurisdiction and, with the consent of the Plaintiff, asked to amend his motion to dismiss in order to withdraw his arguments under Rule 12(b)(2) of the Federal Rules of Civil Procedure. The undersigned granted these requests. (Document No. 36). The remaining portion of the motion to dismiss is now before the Court.

## II. Issues Before the Court

Frank Suess asserts that the Plaintiff's complaint fails to state any claims against him and that the Court should dismiss all claims against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] Defendant Suess correctly notes that the request for injunctive relief is a request for a remedy, not a cause of action. (Document No. 21, p. 9).

### III. Conclusions of Law

#### A. Rule 12(b)(6) of the Federal Rules of Civil Procedure

A motion to dismiss pursuant to Civil Rule 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), *cert. denied*, 510 U.S. 828 (1993), *citing* 5A C. Wright & A. Miller, Federal Practice and Procedure § 1356 (1990); Fed.R.Civ.P. 12(b)(6). The issue is not whether the Plaintiff will ultimately prevail, but rather, whether the Plaintiff is entitled to offer evidence to support its claims.

To survive a Rule 12(b)(6) motion to dismiss, the facts alleged "must be enough to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The court must accept as true all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the Plaintiff. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*; *Eastern Shore Markets, Inc. v. J.D. Associates Long Term Disability Partnership*, 213 F.3d 175, 180 (4th Cir. 2000).

#### B. The Claim for Tortious Interference with Contract

To state a claim for tortious interference with contract under North Carolina law, a plaintiff must allege: (1) the existence of a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and

in doing so, acts without justification; (5) resulting in actual damage to plaintiff.[2]  *Childress v. Abeles*, 240 N.C. 667, 674-75 (1954), *reh'g dismissed*, 242 N.C. 123 (1955); *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, (1988), *affirmed*, 335 N.C. 183, 190-91 (1993); *Teleflex Information Systems, Inc. v. Arnold*, 132 N.C. App. 689, 696 (1999); *and see, American Hot Rod Association, Inc. v. Carrier*, 500 F.2d 1269, 1274-75 (4th Cir. 1974) (citing *Childress* as the leading case in North Carolina for this cause of action).

In the section of the complaint entitled "Defendants' Tortious Interference with DDI's Exclusive Contract," the Plaintiff sets forth the alleged facts underlying this claim. (Document No. 1-2, ¶¶ 20-24).  Significantly, Plaintiff makes no mention whatsoever of Mr. Suess.  Although the Plaintiff generally contends in its brief that it seeks to assert claims against all the Defendants "collectively," review of the alleged facts for this claim does not reflect *any* acts or statements by Frank Suess.  Rather, Plaintiff alleges specific acts only by two corporate Defendants, "Pharma Supply and Diabetic Supply." (*Id.*, ¶¶ 21-22).

Essentially, Plaintiff alleges that Pharma Supply and Diabetic Supply contacted the manufacturer Taidoc in 2006, and despite being aware of Taidoc's exclusive contract with DDI for the marketing of certain products, began distributing Advocate meters manufactured by Taidoc. (Document No. 1-2, ¶¶ 20-24).  Plaintiff alleges that these Advocate meters were identical to the Prodigy meters manufactured by Taidoc for DDI, except for packaging and casing on the products. (*Id.*, ¶ 23).  Even if the complaint is viewed in the light most favorable to the Plaintiff, and even if

---

[2]North Carolina law presumably applies to the parties' claims.  *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("matters of substance....should be settled by reference to the law of the appropriate state"); *Gita Sports Long Term Disability. v. SG Sensortechnik GMBH & Co. KG,* 560 F.Supp.2d 432, 441 (W.D.N.C. 2008) ("Under the long-standing Klaxon principle, a federal court sitting in diversity must apply the substantive law of the forum state").

the factual allegations in the complaint are accepted as true for purposes of this motion to dismiss, the factual section underlying the claim does not contain even a single reference to Mr. Suess. (*Id.*, ¶¶ 20-24). The factual section discussing DDI's contract with Taidoc also does not mention Suess. (*Id.* ¶¶ 10-19 ). Plaintiff does not allege that the Defendants "collectively" participated in the alleged acts underlying this claim. (*Id.* ¶¶ 20-22). The facts alleged in the complaint simply do not state a claim against the individual Frank Suess for tortious interference with contractual relations. While Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the rule does require a "showing," rather than a mere blanket assertion, of entitlement to relief. *Bell Atlantic Corp.*, 550 U.S. at 556 fn.3; Fed.R.Civ.P. 8(a)(2).

Plaintiff's complaint splits the "factual" section from the "statement of claim" section. In the latter section entitled "First Claim for Relief (Tortious Interference with Contractual Relations with Taidoc)," Plaintiff generally recites the five elements of a claim for tortious interference against the "Defendants." Of course, the underlying fact section refers only to Pharma Supply and Diabetic Supply, and does not set forth any acts by Frank Suess. In other words, while the complaint recites the elements for the claim, it does not state facts for this claim against Frank Suess.

The United States Supreme Court has explained that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations.... a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level... on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *Bell Atl. Corp*, 550 U.S. at 556 (citations omitted).

Frank Suess points out that the complaint alleges only *corporate conduct*, not any acts

committed by him in his personal capacity. He points out that Plaintiff seeks to hold him personally liable for acts allegedly committed by the corporation, but without alleging any facts necessary to pierce the corporate veil. (Document No. 5, p. 19). He argues that, "[w]ithout piercing the corporate veil, a corporate officer cannot be held personally liable for acts committed on behalf of his corporation rather than in his own adverse personal interest." (Document No. 5, p. 19), citing *Wilson v. McCleny*, 262 N.C. 121, 133-34 (1964) (holding that "the acts of a corporate officer in inducing his company to sever contractual relations with a third party are presumed to have been done in the interest of the corporation") *and Rauch Industries, Inc. v. Radko*, 2007 WL 3124647, at *3 fn.4 (W.D.N.C.).[3]

Generally, there is no personal liability of a corporate officer for corporate acts. However, an officer "may be liable when the tort is individual and distinguishable from acts on the corporation's behalf or when the officer's or director's acts 'are performed in his own interest and adverse to that of his firm.' " *Embree Const. Group, Inc. v. Rafcor, Inc.*, 97 N.C.App. 418, 423 (1990), *affirmed as modified*, 330 N.C. 487 (1992) (quoting *Wilson*, 262 N.C. at 133-34). Of course, the complaint must reflect a factual basis in order to state a viable claim against the individual. The

---

[3]The Defendant argues that a party seeking to pierce a corporate veil must show: (1) "control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own"; (2) that control "must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights"; and (3) "the aforesaid control and breach of duty must [have] proximately cause[d] the injury or unjust loss complained of." *Rauch Industries, Inc.*, 2007 WL 3124647, at *3. *See Copley Triangle Assoc., Inc. v. Apparel Am., Inc.* 385 S.E.2d 201, 203 (N.C.App.1989) (same).

present complaint does not do so.[4]  *See Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-765 (4th Cir. 2003) (it is not the legal conclusions asserted by Plaintiff, but rather "the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage").

Although Plaintiff assumes that the Court should disregard the distinction between the corporation and an individual officer of that corporation, the complaint suggests no basis for doing so.  The court need not accept as true "unwarranted inferences."  *Giarratano*, 521 F.3d at 302; *Eastern Shore Markets, Inc.*, 213 F.3d at 180.  In sum, the complaint fails to state a claim for relief against Frank Suess personally for "tortious interference with contract."  See, e.g., *Holleman v. Aiken*, 668 S.E.2d 579, 590 (N.C.App. 2008) (affirming dismissal of claims, including tortious interference with contract, because the complaint was "seriously lacking in relevant factual allegations"); *Holroyd v. Montgomery County*, 167 N.C. App. 539, 546 (2004) (affirming dismissal of claim because plaintiff had failed to properly plead an action for tortious interference with contract).

### C.  The Claim for Tortious Interference with Prospective Economic Advantage

Plaintiff lists a separate claim of "Tortious Interference with Prospective Economic Advantage." (Document No. 1-2, ¶¶ 39-45).  To state this claim under North Carolina law, a plaintiff must allege that the defendant "induced a third party to refrain from entering into a contract

---

[4]In fact, the complaint only mentions Frank Suess in three places. (See Document No. 1-2, ¶¶ 5, 25, 31).

with Plaintiff without justification" and that "the contract would have ensued but for Defendants' interference." *Holroyd*, 167 N.C. App. at 546; *Daimler Chrysler Corp. v. Kirkhart*, 561 S.E.2d 276 (N.C. Ct. App. 2002); *S.N.R. Management Corp. v. Danube Partners 141, LLC*, 659 S.E.2d 442, 448 (N.C.App. 2008); *but see*, *EEE-ZZZ Lay Drain Co. v. N.C. Dept. of Human Resources,* 422 S.E.2d 338, 343 (N.C. App. 1992) ("We find no basis for believing that such a cause of action [interference with prospective contractual relations] even exists in North Carolina."), *overruled on other grounds,* 347 N.C. 97 (1997).

"Dismissal under Rule 12(b)(6) is proper when on its face the complaint reveals either no law supports the plaintiff's claim or the absence of facts sufficient to make a good claim, or when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Esancy v. Quinn*, 2006 WL 322607, at *3 (W.D.N.C.) (quoting *Andrews v. Elliot*, 109 N.C.App. 271, 274 (1993)); *and see*, *Teleflex,* 132 N.C.App. at 696-697 (affirming dismissal of plaintiffs' claim for "interference with prospective contracts"); *S.N.R. Management*, 659 S.E.2d at 448 (affirming dismissal of claim because competitor's interference with prospective purchaser's contract with vendor did not constitute tortious interference with contract or with prospective advantage). The Court must consider "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Id.,* citing *Harris v. NCNB*, 85 N.C.App. 669, 670 (1987).

The complaint provides no separate factual section underlying this claim. Nothing in the factual section for "tortious interference with contract" (Document No. 1-2, ¶¶ 20-24) provides a basis for the claim of interference with prospective economic advantage. If the factual section labeled as "Unfair and Deceptive Trade Practices" (*Id*., ¶¶ 25-32) is deemed to provide the

underlying facts for this claim, the initial paragraph (*Id.*, ¶ 25) does refer to all five Defendants, including Frank Suess.  The complaint then alleges various ways in which the "Defendants" allegedly misled various unspecified customers buying Advocate meters instead of Prodigy meters. (*Id*. ¶ 26-32).  For example, the complaint alleges that "Defendants have distributed a document to DDI's customers listing all of the lawsuits DDI and other entities have been involved in and stating "Will you be next?" at the top of the page." (Document No. 1, ¶ 32).

Defendant Suess argues that:

> [E]ven if the allegations in the Complaint against all "Defendants" *were* attributable to Mr. Suess individually, Plaintiff would still fail to meet the requirements for stating a valid claim for tortious interference with prospective advantage since that tort requires a showing that the contractual relationship allegedly disturbed would have ensued "***but for***" the alleged interference. *Dalton v. Camp*, 353 N.C. 647, 654, 531 S.E.2d 258, 265 (2001) (emphasis added) (citations omitted); *Walker v. Sloan*, 137 N.C. App. 387, 393, 529 S.E.2d 236, 242 (N.C. App. 2000) (emphasis added) (citation omitted). The Complaint alleges only that Plaintiff had a "reasonable expectation" that customers with whom Defendants allegedly interfered would continue their business relationships with Plaintiff. (Compl. ¶ 43.) The allegations in the Complaint against ***all*** Defendants, therefore, fail to meet the requirements for a tortious interference with prospective advantage claim. (Document No. 21, p. 10).

*See Holleman*, 668 S.E.2d at 590 (affirming dismissal of claims because plaintiff did not allege the existence of any contracts, but merely the hope of future contracts).  However, viewing the complaint in the light most favorable to the Plaintiff, the allegations regarding existing DDI customers appear sufficient to state a claim for relief. *Bell Atl. Corp.*, 550 U.S. at 555.  Plaintiff is entitled to offer evidence to support this claim.

### D.  The Claim for Unfair and Deceptive Trade Practices

This cause of action is authorized by the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, *et seq*. To state a claim, a plaintiff must establish that (1) the defendant "committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656 (2001); and *see, e.g., Freeman v. Duke Power Co.*, 114 Fed. Appx. 526, 535 (4th Cir. 2004).

"[A]n unfair act or practice is one in which a party engages in conduct which amounts to an inequitable assertion of its power or position." *Southeastern Shelter Corp. v. BTU, Inc.,* 154 N.C.App. 321, 330 (2002). "An act is unfair or deceptive under N.C. Gen.Stat. § 75-1.1 if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." *S.N.R. Management Corp.*, 659 S.E.2d at 448 (quoting *Pierce v. Reichard,* 163 N.C.App. 294, 301 (2004))..

In the factual section entitled "Defendants' Unfair and Deceptive Trade Practices" (Document No. 1-2, ¶¶ 25-32), the complaint alleges that all five Defendants, including Frank Suess, "have conspired and orchestrated a campaign to disrupt or eliminate DDI's sales of its Prodigy meters in the market by a variety of illegal tactics in order to increase sales of the Advocate meters" (*Id*. ¶ 25). The latter language is conclusory in many respects. Factual allegations "must be stated in terms that are neither vague nor conclusory." *Estate Const. Co. v. Miller & Smith Holding Co., Inc.*, 14 F.3d 213, 221 (4th Cir. 1994).[5]

---

[5]The Plaintiff alleges that the Advocate meters sold by Pharma were "identical" to the Prodigy meters manufactured by Taidoc for DDI (*Id.*, ¶ 23), and then rather inconsistently complains that the Defendants engaged in "unfair trade practices" for informing DDI's customers that the Defendants sell the *"same product from the same manufacturer*, just under a different name." (*Id.*, ¶ 26) (italics in original).

In any event, this factual section of the complaint goes on to describe a variety of specific ways in which the "Defendants" allegedly disrupted or eliminated DDI's sales of Prodigy meters, including an allegation that Frank Suess personally "attempted to place an advertisement with the National Federation of the Blind's *Voice of the Diabetic* publication, announcing that DDI's Prodigy AutoCode meter was not FDA approved and stating 'Buyer Beware!' " (Document No. 1-2, ¶ 31).

This factual section also alleges that the Defendants attempted to mislead customers by "passing off" their products as DDI products (*Id.*, ¶ 27, 28), by using an allegedly confusing domain name to direct Internet users to its own website instead of Plaintiff's website (*Id*, ¶ 29), and by disparaging Plaintiff and its products to customers in various ways (*Id.*, ¶ 30-31). Viewing the complaint in the light most favorable to the Plaintiff, the Plaintiff's allegations appear sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.

### E. The Claims for Defamation and "Slander *Per Se*"

"Defamation" encompasses the two separate torts of libel and slander. *Craven v. Cope*, 188 N.C. App. 814, 816 (2008); *Holleman* 668 S.E.2d at 587. Generally, libel is written while slander is spoken. *Iadanza v. Harper*, 169 N.C.App. 776, 781 (2005); *Tallent v. Blake*, 57 N.C.App. 249, 251 (1982).

To state a claim for defamation under North Carolina law, a plaintiff must allege that the defendant caused injury to the plaintiff's reputation "by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C.App. 349, 356 (2004) (quoting *Tyson v. L'Eggs Prods., Inc.*, 84 N.C.App. 1, 10-11 (1987)). The claim must be described "with sufficient particularity" so as "to enable the court

to determine whether the statement, was [in fact,] defamatory." *Andrews,* 109 N.C.App. at 274.

The Complaint sets forth the factual allegations with respect to the "Fourth Claim for Relief (Defamation)" (Document No. 1, ¶¶ 49-53) and "Fifth Claim for Relief (Slander *Per Se*)" (Id., ¶ 54-58) as follows:

> 30. The Defendants have also made a number of false and misleading representations, both spoken and written, to DDI's customers in order to disparage DDI and its products and encourage consumers to purchase Defendants' competing products, including, but not limited to, statements that:
>> (a) DDI's Prodigy® meters are not approved by the FDA;
>>
>> (b) DDI's Prodigy® meters were originally Defendants' products and DDI stole the idea;
>>
>> (c) Production of the Prodigy® meters is being discontinued; and
>>
>> (d) DDI is having financial difficulty and will not be in business much longer.
>
> 31. Specifically, Defendants Frank Suess and Diabetic Support Program attempted to place an advertisement with the National Federation of the Blind's *Voice of the Diabetic* publication, announcing that DDI.s Prodigy® AutoCode meter was not FDA approved and stating "Buyer Beware!" The National Federation of the Blind is one of DDI's biggest clients, as it promotes DDI's meters to its blind diabetic patients.
>
> 32. Additionally, the Defendants have distributed a document to DDI's customers listing all of the lawsuits DDI and other entities have been involved in and stating "Will you be next?" at the top of the page. Defendants have done this in an effort to scare DDI's customers and cause them to purchase meters from Defendants instead of DDI. (Document No. 1-2, ¶¶ 30-32).

The "Fourth Claim for Relief (Defamation)" refers to the statements in paragraph 30 (a, c, d) above, while the "Fifth Claim for Relief (Slander *Per Se*)" refers to the statements in paragraph 31 above.

The alleged defamatory statement need not be set out verbatim in the complaint if alleged

"substantially *in haec verba,* or with sufficient particularity to enable the court to determine whether the statement was defamatory." *Stutts.,* 47 N.C.App. at 83-84; *Morrow,* 57 N.C.App. at 21. With respect to the "Fourth Claim for Relief (Defamation)," the complaint sufficiently sets forth the content of the allegedly defamatory statements, albeit without identifying any time or date.[6] Viewing the complaint in the light most favorable to the Plaintiff, the allegations appear sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 127 S.Ct. at 1964.

With respect to the remaining claim of slander *per se*, "publications or statements which are susceptible of but one meaning, when considered alone without innuendo, colloquium, or explanatory circumstances, and that tend to "disgrace and degrade the party or hold him up to public hatred, contempt, or ridicule, or cause him to be shunned and avoided" are defamatory *per se. Flake v. Greensboro News Co.,* 212 N.C. 780, 786 (1938). To be actionable, the "statement must be false and must be communicated to a person or persons other than the person defamed." *Andrews,* 109 N.C.App. at 274; *Nucor Corp. v. Prudential Equity Group*, 659 S.E.2d 483, 486 (2008). "Malice and damages are presumed from the fact of publication and no proof is required as to any resulting injury." *Andrews,* 109 N.C.App. at 274 (citing *Flake*, 212 N.C. at 785).

To the extent the Plaintiff alleges that the attempted advertisement contained defamatory language, Plaintiff's claim would more properly be characterized as "libel per se." *See Holleman*,

---

[6]The complaint does not indicate any time or date for any of the allegedly defamatory statements. Plaintiff only generally indicates the alleged statements in ¶¶ 30, 32 were made "to DDI's customers." Allegations of time and place are material for purposes of testing the sufficiency of a pleading and, therefore, should be pleaded in the complaint. Fed. R. Civ. P. 9(f); see *Stutts*, 47 N.C.App. at 83 (finding that use of the date "September 10, 1976" was sufficient for the time requirement of Rule 9(f)). Rather than dismissing the claim, the Court could require that a more definite statement be provided.

668 S.E.2d at 587 ("publications obviously defamatory are called libel *per se*").  The United States Supreme Court has succinctly observed that:

> The essence of libel *per se* is the publication in writing of false statements that tend to injure a person's reputation. The essence of slander *per se* is the publication by spoken words of false statements imputing to a person a criminal offense; a loathsome disease; matter affecting adversely a person's fitness for trade, business, or profession; or serious sexual misconduct. 1 F. Harper & F. James, Law of Torts §§ 5.9-5.13 (1956); Restatement (Second) of Torts §§ 558, 559, 569-574 (1977); W. Prosser, Law of Torts § 112 (4th ed. 1971). *Carey v. Piphus*, 435 U.S. 247, 263 fn. 18 (1978).

*See also, Nucor Corp.*, 659 S.E.2d at 486.  However, the Plaintiff's complaint indicates that the advertisement was *not actually published in the magazine*.  (See Document No. 1-2, ¶ 31, alleging that the Defendant "attempted to place an advertisement").  In its brief, the Plaintiff acknowledges that this advertisement was refused by the magazine.  (Document No. 15, p. 19).  Absent "publication" to a third party, no claim for libel *per se* is stated.

Of course, the Court must review the complaint as pleaded.  To the extent Plaintiff alleges "slander *per se*," the only oral statement possibly suggested in ¶ 31 of the Complaint would be any discussion that impliedly took place with unidentified magazine staff in attempting to place the advertisement.  Plaintiff cites *Andrews v. Elliot* for the proposition that a complaint states a claim for defamation where a plaintiff sends a defamatory letter to a newspaper, even when the letter is not actually printed in the newspaper.  However, Plaintiff is drawing an overly broad conclusion from that case.  In *Andrews*, unlike the present case, the complaint specifically alleged that the letter had been seen and read by at least three persons at the newspaper, namely, "the publisher, the managing editor, and a reporter."  *Id*. at 275.  The complaint in *Andrews* set forth the alleged defamatory

portions of the letter, including alleged accusations by defendant that plaintiff lied to a reporter, violated the Rules of Professional Conduct, and was guilty of criminal and unethical conduct. The *Andrews* court concluded that the plaintiff had adequately alleged the essential elements of a claim for defamation *per se*. *Id*.

As pleaded, the present complaint lacks any allegation that any individuals at the magazine read the "attempted" advertisement or were orally told about the statements contained in it. To the extent such communication is inherent in "attempting to place an advertisement" with a newspaper, and given the requirement that all reasonable inferences be drawn in the Plaintiff's favor for purposes of a motion to dismiss, this claim narrowly survives the motion to dismiss. Construing the allegations regarding this claim in the light most favorable to Plaintiff, this claim may go forward at this stage of the pleadings.

## IV. Conclusion

**IT IS, THEREFORE, RECOMMENDED** that the Defendants' "Motion to Dismiss the Complaint" (Document No. 4) should be **GRANTED in part** and **DENIED in part** as follows:

>  1) the claim of "tortious interference with contract" against Frank Suess should be dismissed;

>  2) the remaining claims against Frank Suess should not be dismissed.

## V. Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions law and the recommendations contained in this memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d

1363, 1365 (4th Cir.1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C.1990). Failure to file objections to this memorandum with the District Court constitutes a waiver of the right to *de novo* review by the District Court, *Snyder*, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984).

Signed: May 11, 2009

David C. Keesler
United States Magistrate Judge