UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO: 3:08-CV-149-RJC-DCK

| | |
|---|---|
| DIAGNOSTIC DEVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | MEMORANDUM AND |
| PHARMA SUPPLY, INC. et al, ) | RECOMMENDATION |
| ) | |
| Defendants. ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Motion to Dismiss the Complaint" (Document No. 24) filed by Diabetic Supply of Suncoast, Inc. and its President, Dan Dennis. The Plaintiff opposes the motion. (Document No. 29). This matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and is ripe for consideration. Having carefully considered the record, including the briefs and exhibits (Document Nos. 24-26, 29, 31), the undersigned recommends that the motion be **granted**, based on the following proposed findings of fact and conclusions law:

### I. Background

On March 5, 2008, the Plaintiff ("DDI") filed its "Complaint" against five Defendants, 1) Pharma Supply, Inc. ("Pharma"), 2) National Home Respiratory Service, Inc. ("Home Respiratory"), 3) Frank Suess, 4) Diabetic Supply of Suncoast, Inc. ("Suncoast"),[1] and 5) Dan Dennis, in Mecklenburg County Superior Court, Case No. 08-CVS-4628. (Document No. 1-2). The Defendant

---

[1]DDI refers to Diabetic Supply of Suncoast, Inc. as "Diabetic Supply," whereas Diabetic Supply of Suncoast, Inc. refers to itself as "Suncoast" in its brief. The Court will use "Suncoast."

companies are business competitors of DDI and sell glucose meters and related products. The individual Defendants are corporate officers of the competing companies. Defendants sell Advocate products and compete with DDI, which sells Prodigy products.

According to the Complaint, DDI obtains its Prodigy products under an exclusive sales contract from the Taiwanese manufacturer Taidoc. (Document No. 1-2, ¶ 14). As a distributor, Pharma purchased Prodigy meters from DDI until mid-2006. (*Id*. ¶ 20). Thereafter, Pharma and Suncoast began purchasing Advocate products directly from Taidoc. (*Id*. ¶¶ 21-22). DDI contends that the Advocate meters "are identical in every way to DDI's Prodigy meters, except for the packaging and casing on the products." (*Id*. ¶ 23).[2]

In the Complaint, DDI asserts claims against all five Defendants under the headings of "Tortious Interference with Contractual Relations with Taidoc," "Tortious Interference with Prospective Advantage," "Unfair Competition," "Defamation," and "Slander *per se*." The Complaint provides several separate factual sections, followed by a section which generally recites the elements for the claims against all five Defendants "collectively." Plaintiff requests injunctive relief and damages.[3]

With respect to personal jurisdiction, the Complaint alleges that Suncoast is "a corporation organized and existing under the laws of the state of Florida" and that Dan Dennis is "a resident and

---

[2] Although the Complaint asserts that the meters are identical, the Complaint inconsistently asserts that Defendants misrepresented to customers that they "sell the same product from the same manufacturer, just under a different name." (Document No. 1-2, ¶ 26). The Complaint also inconsistently claims that Advocate brand test strips are the "only type of test strips that will work on the Advocate meter," which suggests there are actual differences between the competitors' products. (*Id*. ¶ 28).

[3] The request for injunctive relief is a request for a remedy, not a cause of action. (Document No. 21, p. 9).

citizen of Puerto Rico." (Document No. 1-2, ¶¶ 6-7). The Complaint generally alleges that these two out-of-state Defendants are "conducting business in North Carolina." (*Id*.).

The Defendants point out that, contrary to the Plaintiff's allegation, Suncoast is actually a Puerto Rico corporation doing business primarily within Puerto Rico. (Document No. 25-2, Exh. 1, "Declaration" ¶¶ 3, 5). In his Declaration, Dan Dennis indicates that Suncoast also does some business on the mainland with Pharma and Home Respiratory in Florida, but that "Suncoast's business with Pharma and Home Respiratory is the only business Suncoast conducts within the United States." (*Id*. ¶ 5) (emphasis in original).[4] Dan Dennis contends that he does not "conduct business in North Carolina, either on my own behalf or on behalf of Suncoast, in person, by telephone, facsimile, e-mail, or otherwise." (*Id*. ¶ 6). He indicates that he resides and works in Puerto Rico, and has no connection whatsoever with North Carolina. (*Id*.).

On April 4, 2008, this case was removed to the United States District Court for the Western District of North Carolina. Suncoast and Dan Dennis ("Defendants") filed a motion to dismiss, asking the Court to dismiss the claims against them for lack of personal jurisdiction pursuant to Civil Rule 12(b)(2). The motion also asks the Court to dismiss with prejudice the claims against Dan Dennis for failure to state a claim pursuant to Civil Rule 12(b)(6).

## II. Issues Before the Court

The Court must determine 1) whether it may properly exercise personal jurisdiction over either of these two out-of-state Defendants, and 2) whether the Complaint adequately sets forth sufficient facts to state any claims against Dan Dennis.

---

[4]According to a recent filing, DDI was also located in Florida and operated there until 2006, when it moved to North Carolina. (See Document No. 55, pp. 2-4). Subject-matter jurisdiction and related issues have been raised separately and will not be addressed here.

## III. Conclusions of Law

## A. Personal Jurisdiction, Rule 12(b)(2)

Suncoast and Dan Dennis assert that the Complaint fails to allege facts sufficient to show that a North Carolina court can exercise personal jurisdiction over them and that dismissal is appropriate under Rule 12(b)(2). They argue that personal jurisdiction over them is not authorized by the North Carolina Long Arm Statute, N.C. Gen. Stat. § 1-75.4, and that the exercise of jurisdiction would not comport with due process.

When a district court determines personal jurisdiction on the basis of briefs and the allegations in the complaint, without an evidentiary hearing, "the plaintiff bears the burden of making a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge."[5] *Consulting Engineers, Inc. v. Geometric Limited*, 561 F.3d 273, 278 (4th Cir. 2009) (citing *Combs v. Baker*, 886 F.2d 673, 676 (4th Cir. 1989); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396-97 (4th Cir. 2003); *Sweezy v. Specialized Bicycle Components, Inc.,* 2009 WL 382719, *1 (W.D.N.C. 2009). In the present case, the motion is being decided on the record without an evidentiary hearing.

A federal court exercises personal jurisdiction over a defendant in the manner provided by state law. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997); Fed.R.Civ.P. 4(k)(1)(A). The court must first consider whether the forum state's long-arm statute authorizes personal jurisdiction. *Consulting Engineers*, 561 F.3d at 278. If it does, the court next considers whether the defendant has sufficient contacts with the forum state to meet the requirements of the

---

[5]A prima facie showing is defined as a showing "sufficient to establish a fact or raise a presumption unless disproved or rebutted." Black's Law Dictionary (8th ed. 2004).

Due Process Clause of the Fourteenth Amendment. *Id.*

Personal jurisdiction may be "general" or "specific." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 (1984). General personal jurisdiction exists when a defendant has "continuous and systematic" contacts with the forum state. *Helicopteros*, 466 U.S. at 411 fn. 9; *Saudi v. Northrop Grumman*, 427 F.3d 271, 276 (4th Cir. 2005). If general jurisdiction is lacking, the Plaintiff may establish more limited "specific" jurisdiction by showing that the underlying claims arose from or are related to the defendant's actions within the state. *Helicopteros*, 466 U.S. at 411, fn. 8. Here, DDI asserts that this Court has specific personal jurisdiction over the Defendants.

A district court may exercise specific personal jurisdiction over a defendant only if the defendant has sufficient "minimum contacts" with the forum state. *International Shoe v. Washington*, 326 U.S. 310, 316 (1945). Specific jurisdiction is based on the concept that a party who enjoys the privilege of conducting business in the forum state should bear the reciprocal obligation of answering to legal proceedings in that forum state. *Id.* at 319; *Young v. New Haven Advocate,* 315 F.3d 256, 261 (4th Cir. 2002) (observing, in a case based on a newspaper's Internet activities, that the "plaintiff, of course, has the burden to establish that [specific] personal jurisdiction exists over the out-of-state defendant."). Each defendant's contacts with a forum state must be assessed individually. *Calder v. Jones*, 465 U.S. 783, 790 (1984).

To the extent DDI suggests that Suncoast and Mr. Dennis are subject to personal jurisdiction in North Carolina because they do business with several Florida companies which, in turn, do some business in North Carolina, it is well-settled that a defendant must *himself* have contact with the forum state in order to be subject to the personal jurisdiction of that state. *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (holding that personal jurisdiction is proper only

"where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state").

The North Carolina Long Arm Statute authorizes the exercise of jurisdiction over a defendant in twelve circumstances. N.C. Gen. Stat. § 1-75.4(1) - (12). In its Complaint, DDI generally cites the statute, but fails to identify which provision allegedly applies. (Document No. 1-2, ¶ 8). In its response, Plaintiff clarifies that it seeks to proceed under provision § 1-75(4), which provides jurisdiction in the following circumstance:

> (4) Local Injury; Foreign Act. – In any action .... claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:
> a. Solicitation or services activities were carried on within this State by or on behalf of the defendant;
> b. Products, materials or thing processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade; or
> c. Unsolicited bulk commercial electronic mail was sent into or within this State by the defendant using a computer, computer network, or the computer services of an electronic mail service provider in contravention of the authority granted by or in violation of the policies set by the electronic mail service provider. Transmission of commercial electronic mail from an organization to its members shall not be deemed to be unsolicited bulk commercial electronic mail.

This statute extends personal jurisdiction to the extent permitted by the Due Process Clause, and thus, the statutory and constitutional inquiries merge. *See Hiwassee Stables, Inc. v. Cunningham*, 135 N.C.App. 24, 27 (1999). Plaintiff urges the Court to bypass the state long-arm statute and consider only whether due process is satisfied. However, Defendants correctly point out that if jurisdiction is not authorized under the North Carolina Long Arm Statute, the Court need not engage in additional due process analysis. (Document No. 32, p. 3).

Although the Complaint alleges that Suncoast and Dan Dennis are "doing business" in North Carolina, this generalized allegation is vague and conclusory. The Complaint is largely devoid of any specific facts indicating a basis for this allegation with respect to either Defendant. In fact, the Complaint refers to only one specific act by Dan Dennis, namely, his registration and use (on behalf of Suncoast) of the Internet domain name "prodigymeters.com," which DDI asserts is confusingly similar to its own Internet domain name "prodigymeter.com." (Document No. 1, ¶ 29).[6]

Plaintiff argues that this Court has specific personal jurisdiction over Dan Dennis and Suncoast because they registered and used this domain name to direct Internet users to Suncoast's own website at "www.dsosi.com," which provides information for Advocate products, rather than to DDI's website for information about Prodigy products. (Document No. 29, pp. 2, 22). The Plaintiff makes the conclusory assertion that the Defendants intended to "cause harm in North Carolina thereby purposefully directing their tortious activities at DDI in North Carolina." (*Id*.). The Complaint alleges that:

> Dan Dennis, on behalf of [Suncoast], has registered and is using the domain name "prodigymeters.com" which is confusingly similar to DDI's official domain name "prodigymeter.com." [Suncoast] is using the confusingly similar domain name to link Internet users searching for DDI's website to [Suncoast's] own website at "www.dsosi.com" which does not promote or sell Prodigy meters of any sort, but

---

[6]Microsoft's "Webopedia" site (http://www.internet.com) provides an online encyclopedia of computer technology. It defines the term "domain name" as "a name that identifies one or more IP addresses" and explains that domain names are used to identify particular Web pages. For example, the URL http://www.pcwebopedia.com/index.html, contains the domain name pcwebopedia.com. The suffix for each domain name indicates the top level domain as well. For example, "gov" for government agencies, "edu" for educational institutions, "org" for nonprofit organizations, and "com" for commercial businesses. Webopedia explains that the Internet is based on IP addresses, not domain names, and thus, each Web server requires a Domain Name System (DNS) server to translate domain names into IP addresses.

> instead advertises and sells the Advocate meters, which are in direct competition with the Prodigy meters. [Suncoast] is using the domain name "prodigymeters.com" in this way in an effort to capitalize on DDI's Prodigy name and steal DDI's customers. (Document No. 1-2, ¶ 29).

Plaintiff acknowledges that after the Complaint was filed, the domain settings were changed to resolve to a search page, instead of redirecting to "www.dsosi.com." (*Id.*, Ellis Decl., ¶ 7, Ex. 5).

Turning to the North Carolina Long-Arm Statute, part (c) does not apply because the Defendants did not send bulk email ("spam") into North Carolina. Part (b) does not apply because the Defendants did not "process, service, or manufacture" any products used in North Carolina. For part (a) to apply, "solicitation or services activities" must have been carried on within North Carolina by or on behalf of the Defendants in conjunction with the "out-of-state act."

The applicability of the statute thus turns on whether the Defendants' registration of a similar domain name was accompanied by "solicitation or services activities" carried on within North Carolina by these Defendants.[7] Although DDI characterizes the effect of Suncoast's domain name registration as "directing their tortious activities at DDI in North Carolina," Plaintiff's statement amounts to a legal conclusion that need not be accepted. The domain name provided a link to Suncoast's own website, but did not target North Carolina in particular. Certainly, the general purpose of the Suncoast website was to provide information and encourage sales for its Advocate products, but any direct relation to North Carolina is tenuous at best.

The North Carolina courts have considered the issue of jurisdiction under the North Carolina Long-Arm Statute with respect to websites. In *Dailey v. Popma*, 662 S.E.2d 12, 14 (N.C.App. 2008),

---

[7]The discussion of the applicability of the statute and the existence of minimum contacts essentially merges here.

the Court held that:

> The internet presents unique considerations when it comes to issues of personal jurisdiction. Because of the nature of the internet, this Court, in *Havey v. Valentine,* 172 N.C.App. 812, 616 S.E.2d 642 (2005), adopted the Fourth Circuit's personal jurisdiction test for internet communications set out in *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707 (4th Cir.2002), *cert. denied,* 537 U.S. 1105 (2003). In this case, we adopt the Fourth Circuit's refinement of that test in *Young v. New Haven Advocate,* 315 F.3d 256 (4th Cir. 2002), *cert. denied,* 538 U.S. 1035 (2003). Because plaintiff has presented no evidence suggesting that defendant, through his internet postings, manifested an intent to target and focus on North Carolina readers, the record contains no basis, under the *Young* test, for asserting personal jurisdiction over defendant.

In *ALS Scan,* the Fourth Circuit held that the district court lacked personal jurisdiction over the defendant because the defendant's role as an internet service provider was "passive" and the defendant had not "purposefully availed itself of the privilege of conducting business or other transactions" in the forum state. *ALS Scan,* 293 F.3d at 714-715. The Fourth Circuit Court of Appeals further observed that "specific jurisdiction in the Internet context may be based only on an out-of-state person's Internet activity directed at [the forum state] and causing injury that gives rise to a potential claim cognizable in [that state]." *Id.* (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997) (discussing a sliding scale model of Internet contacts and observing that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity an entity conducts over the Internet.")).[8]

---

[8]The widely-cited *Zippo* case involved contracts with thousands of individual residents of the forum state and seven corporations located in the forum state. *See also, Design88 Ltd. v. Power Uptik Productions, L.L.C.*, 133 F.Supp.2d 873, 876-78 (W.D.Va. 2001) (involving a membership-based day-trading website with hundreds of members using it interactively on a daily basis). A more typical advertising website, such as the one at issue in the present case,

In *Young v. New Haven Advocate*, 315 F.3d 256, 262-263 (4th Cir. 2002), the Fourth Circuit Court of Appeals emphasized that it was important "to look at whether the defendant has expressly aimed or directed its conduct toward the forum state." (citing *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625-26 (4th Cir.1997) and *ALS Scan*, 293 F.3d at 714 (holding in the Internet context that, to find jurisdiction, the out-of-state defendant's Internet activity must expressly be targeted at or directed to the forum state)).

Plaintiff has failed to show this key factor. Advertisements and solicitations not targeted to the forum, but made in nationally available publications that subsequently find their way into the forum, are insufficient to support a finding of general jurisdiction, even when coupled with *de minimus* sales in the forum. *ESAB Group*, 126 F.3d at 623-24; *see also, Williams v. Advertising Sex, LLC*, 2009 WL 723168, *9 (N.D.W.Va. 2009) (observing that the fact that a generally accessible website offers products for sale to anyone is insufficient to establish personal jurisdiction for suit); *Burleson v. Toback*, 391 F.Supp.2d 401 (M.D.N.C. 2005) (holding that an entity's semi-interactive website did not confer specific personal jurisdiction over entity); *Jim Myers & Son, Inc. v. Motion Indus., Inc.*, 140 F.Supp.2d 595, 600 (W.D.N.C. 2001)) (finding that website did not provide a basis for personal jurisdiction); *CEM Corp. v. Personal Chemistry AB*, 192 F.Supp.2d 438 (W.D.N.C. 2002) (granting motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction because Plaintiff "has failed to meet its burden to show that P.C. created a substantial connection to North Carolina by action purposefully directed toward North Carolina").[9]

---

would be toward the other end of *Zippo's* sliding scale.

[9]In *CEM Corp.*, the Defendant advertised on a website accessible in North Carolina. The website was not specifically targeted to North Carolina residents. The court found that this did

Plaintiff relies heavily on a Maryland case which predates the North Carolina decision in *Dailey v. Popma*. *See Cole-Tuve, Inc. v. American Machine Tools Corp.*, 2004 WL 2399091 (D. Md. 2004). In *Cole-Tuve, Inc.,* the court held under Maryland's long-arm statute that it could exercise specific personal jurisdiction over an Illinois competitor of a Maryland seller of machine tools. The seller alleged that the competitor intentionally registered a deceptive website for the sole purpose of redirecting Maryland customers from the Maryland seller to the competitor. Unlike the present case, the seller's *only* business and the competitor's *exclusive* target was in the forum state of Maryland. Here, DDI sells its products on a national basis, and the Plaintiff has not shown that Suncoast's website was actually "directed" at North Carolina.

Even if Suncoast's website directed inquiries to its own website, this does not mean it "targeted" North Carolina customers. DDI confuses harm to itself (at its current location) with the minimum contacts necessary to assert personal jurisdiction over a Defendant.[10] For example, if DDI had moved to Arkansas, instead of North Carolina, the alleged harm to DDI from the redirecting of potential customers would be the same, but would not instantly allow personal jurisdiction over the Defendants in Arkansas. DDI's interpretation of harm to itself as the basis for providing minimum contacts over Defendants would turn the concept of personal jurisdiction on its head. *See ESAB Group*, 126 F.3d at 625-26 (holding that personal jurisdiction could not be asserted over a business offering sales generally in the United States, even though it had customers in the forum state, and

---

not support general personal jurisdiction over the defendant in North Carolina. *CEM Corp.*, 192 F.Supp.2d 438.

[10]The Defendants have raised significant issues regarding the basis for diversity and subject-matter jurisdiction in this case, including whether DDI is actually a Florida or North Carolina corporation. (See Document No. 55).

noting that such a rule would make jurisdiction hinge on the plaintiff's choice of residence instead of on the defendant's purposeful availment or expressly aimed activities). "Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction ... is to be upheld." *Id*.; *and see, American Information Corp. v. American Infometrics, Inc*. 139 F.Supp.2d 696, 700 (D.Md. 2001) ("Fourth Circuit cases on minimum contacts support the view that the [Defendant's] Web site ... does not create jurisdiction in Maryland....[a] company's sales activities focusing 'generally on customers located throughout the United States and Canada without focusing on and targeting' the forum state do not yield personal jurisdiction.").[11]

Suncoast and Dan Dennis had no discernible connection with North Carolina other than the availability of Suncoast's Web site to North Carolina users. *American Information Corp.*, 139 F.Supp.2d at 696 ("a passive Web site cannot create specific jurisdiction simply because it is theoretically available to Web users in [the forum state] and everywhere else"); *Williams*, 2009 WL 723168, *1 (concluding that court could not exercise personal jurisdiction over defendants because their alleged Internet activity did not establish the requisite purposeful minimum contacts to satisfy due process).

Plaintiff indicates that the Suncoast website provided information about its own products and sales. This does not indicate that Suncoast's website was anything more than a typical advertising website, which is not grounds for the exercise of specific personal jurisdiction. See *Zippo*, 952 F.Supp. at 1124; *Williams*, 2009 WL 723168, at *9 (holding that Plaintiff failed to establish that the

---

[11]The Court wryly noted that "[a]s there is to date 'no District Court of Cyberspace'.... a contrary ruling would subject defendant to jurisdiction in every state in the country." *American Information,* 139 F.Supp.2d at 700 (quoting *Design88*, 133 F.Supp.2d 873, 877-78).

defendants' websites were "anything other than generally accessible websites offering sales or posting advertisements to anyone in the United States and the Internet world").

Other federal courts have agreed with this analysis. *See, e.g., Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir.1999) (refusing to allow personal jurisdiction over defendant whose only connection with forum was a website providing users with a printable mail-in order form, a toll-free telephone number, and defendant's mailing address); *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir.1998) (stating that "simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another"). Plaintiff has not shown that this Court may exercise specific personal jurisdiction over Suncoast and Dan Dennis by virtue of their domain name registration.

### B. Rule 12(b)(6) – Failure to State A Claim

Even assuming, *arguendo*, that this Court has personal jurisdiction over Dan Dennis, this Defendant argues additional grounds for dismissal. A motion to dismiss pursuant to Civil Rule 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), *cert. denied*, 510 U.S. 828 (1993), *citing* 5A C. Wright & A. Miller, Federal Practice and Procedure § 1356 (1990); Fed.R.Civ.P. 12(b)(6). The issue is not whether the Plaintiff will ultimately prevail, but rather, whether Plaintiff is entitled to offer evidence to support its claims.

To survive a Rule 12(b)(6) motion to dismiss, the facts alleged "must be enough to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court

"should view the complaint in the light most favorable to the Plaintiff." *Mylan Labs, Inc. v. Matkar*, 7 F.3d 11130, 1134 (4th Cir. 1993). The court must accept as true all well-pleaded factual allegations in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n.1 (2002). The court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008); *Eastern Shore Markets, Inc. v. J.D. Associates Long Term Disability Partnership*, 213 F.3d 175, 180 (4th Cir. 2000).

Dan Dennis points out that the complaint alleges only *corporate conduct*, not any acts committed by him in his personal capacity. In other words, Plaintiff seeks to hold him personally liable for acts allegedly committed by or on behalf of the corporation. Plaintiff has not alleged any facts that would even suggest piercing the corporate veil. *See Wilson v. McCleny*, 262 N.C. 121, 133-34 (1964) (acts by corporate officers are presumed to be on behalf of the corporation).

### (1) Tortious Interference with Contract

North Carolina law presumably applies to the parties' claims. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) ("matters of substance....should be settled by reference to the law of the appropriate state"); *Gita Sports Long Term Disability. v. SG Sensortechnik GMBH & Co. KG,* 560 F.Supp.2d 432, 441 (W.D.N.C. 2008) ("Under the long-standing Klaxon principle, a federal court sitting in diversity must apply the substantive law of the forum state").

To state a claim for tortious interference with contract under North Carolina law, a plaintiff must allege: (1) the existence of a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so, acts without justification; (5) resulting in actual damage to plaintiff. *Childress v. Abeles*,

240 N.C. 667, 674-75 (1954), *reh'g dismissed*, 242 N.C. 123 (1955); *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 661, (1988), *affirmed*, 335 N.C. 183, 190-91 (1993); *Teleflex Information Systems, Inc. v. Arnold*, 132 N.C. App. 689, 696 (1999).

In the section of the complaint entitled "Defendants' Tortious Interference with DDI's Exclusive Contract," the Plaintiff sets forth the alleged facts underlying this claim. (Document No. 1-2, ¶¶ 20-24). Significantly, Plaintiff makes no mention whatsoever of Dan Dennis. Although the Plaintiff generally contends in its brief that it seeks to assert claims against all the Defendants "collectively," review of the alleged facts underlying this claim does not reflect *any* acts or statements by Dan Dennis. Rather, Plaintiff alleges specific acts only by two corporate Defendants, Pharma Supply and Suncoast. (*Id.*, ¶¶ 21-22).

Essentially, Plaintiff alleges that Pharma Supply and Suncoast contacted the manufacturer Taidoc in 2006, and despite being aware of Taidoc's exclusive contract with DDI for the marketing of certain products, began distributing Advocate meters manufactured by Taidoc. (Document No. 1-2, ¶¶ 20-24). Even if the complaint is viewed in the light most favorable to the Plaintiff, and even if the factual allegations in the complaint are accepted as true for purposes of this motion to dismiss, the factual section underlying the claim does not contain even a single reference to Dan Dennis. (*Id.* ¶¶ 20-24). The factual section discussing DDI's contract with Taidoc also does not mention Dan Dennis. (*Id.* ¶¶ 10-19 ). Plaintiff does not even allege that the Defendants "collectively" participated in the alleged acts underlying this claim. (*Id.* ¶¶ 20-22).

The underlying fact section refers only to Pharma Supply and Suncoast and does not set forth any acts by Dennis. Hence, the complaint fails to state a claim against the individual Dan Dennis for tortious interference with contractual relations. While Rule 8(a)(2) requires only "a short and

plain statement of the claim showing that the pleader is entitled to relief," the rule does require a "showing," rather than a mere blanket assertion, of entitlement to relief. *Bell Atlantic Corp.*, 550 U.S. at 556 fn.3; Fed.R.Civ.P. 8(a)(2). Plaintiff has not sufficiently stated this claim against Dan Dennis.

### 2. The Claim for Tortious Interference with Prospective Economic Advantage

Plaintiff lists a separate claim of "Tortious Interference with Prospective Economic Advantage." (Document No. 1-2, ¶¶ 39-45). To state this claim under North Carolina law, a plaintiff must allege that the defendant "induced a third party to refrain from entering into a contract with Plaintiff without justification" and that "the contract would have ensued but for Defendants' interference." *Holroyd*, 167 N.C. App. at 546; *Daimler Chrysler Corp. v. Kirkhart*, 561 S.E.2d 276 (N.C. Ct. App. 2002); *S.N.R. Management Corp. v. Danube Partners 141, LLC*, 659 S.E.2d 442, 448 (N.C.App. 2008).

Again, the Plaintiff's generalized allegations against the corporate Defendants are insufficient to state a claim against Dan Dennis personally. The factual section underlying the claim does not contain any allegations against Dan Dennis. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (quoting *Bell Atlantic Corp.,* 550 U.S. at 555).

Although the Plaintiff recites the elements of the claim later in the Complaint, a claim is insufficient if it makes "naked assertions" without "further factual enhancement." *Bell Atlantic Corp.* 550 U.S. at 557. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555; *and see, Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764 -765 (4th Cir. 2003) (it is not the legal conclusions asserted by

Plaintiff , but rather "the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage"). Plaintiff has not sufficiently stated this claim against Dan Dennis.

### 3) The Claims for Defamation and "Slander *Per Se*"

Under North Carolina law, "defamation" encompasses the two separate torts of libel and slander. *Craven v. Cope*, 188 N.C. App. 814, 816 (2008). Generally, libel is written while slander is spoken. *Iadanza v. Harper*, 169 N.C.App. 776, 781 (2005); *Tallent v. Blake*, 57 N.C.App. 249, 251 (1982).

To state a claim for defamation under North Carolina law, a plaintiff must allege that the defendant caused injury to the plaintiff's reputation "by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C.App. 349, 356 (2004) (quoting *Tyson v. L'Eggs Prods., Inc.*, 84 N.C.App. 1, 10-11 (1987)). The claim must be described "with sufficient particularity" so as "to enable the court to determine whether the statement, was [in fact,] defamatory." *Andrews,* 109 N.C.App. at 274.

Here, the Complaint completely fails to set forth *who* said *what* to *whom*. It also fails to plead any time and place, i.e, *when* and *where* the allegedly defamatory statements were made. The Complaint merely refers to statements made by "Defendants" to "third-parties" or "customers" generally, and does not even identify the alleged speaker of any statements, much less any recipients. While the gist of some alleged statements are provided, the allegations are otherwise devoid of any relevant factual detail. (Document No. 1-2, ¶¶ 50-58).

A complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft*, 129 S.Ct. at 1949 (quoting *Bell Atlantic*, 550 U.S. at 557). To survive

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. The plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Here, the Complaint does not allege that Dan Dennis made any specific statements to any specific person at any stated time or place. Hence, the Complaint contains insufficient facts to state a claim with respect to Dan Dennis.

### III. Conclusion

Dismissal pursuant to Rule 12(b)(2) is appropriate because (1) Dan Dennis, a resident and citizen of Puerto Rico, did not purposefully avail himself of the privilege of doing business in North Carolina to an extent sufficient to justify specific personal jurisdiction over him, and (2) Suncoast, a Puerto Rico company, did not purposefully avail itself of the privilege of doing business in North Carolina to an extent sufficient to justify personal jurisdiction over it.

The Complaint sets forth only general allegations against the corporate Defendants, without alleging that Dan Dennis made any specific statements to any specific person at any stated time or place. Hence, the Complaint fails to state a claim against Dan Dennis for tortious interference with contract, tortious interference with prospective advantage, defamation, or slander *per se*. Defendant does not argue that the claim for unfair competition should be dismissed.

**IT IS, THEREFORE, RECOMMENDED** that the Defendants' "Motion to Dismiss the Complaint" (Document No. 24) should be **GRANTED in part** and **DENIED in part** as follows:

> 1) Dan Dennis should be dismissed as a party for lack of personal jurisdiction; and
> 2) Suncoast should be dismissed as a party for lack of personal jurisdiction; and
> 3) the claims against Dan Dennis for tortious interference with

contract, tortious interference with prospective advantage, defamation, and slander *per se* should be dismissed for failure to state a claim.

### IV. Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions law and the recommendations contained in this memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir.1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C.1990). Failure to file objections to this memorandum with the District Court constitutes a waiver of the right to *de novo* review by the District Court, *Snyder*, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984).

Signed: June 19, 2009

David C. Keesler
United States Magistrate Judge