UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08cv149-RJC-DCK AND 3:08-cv-559-RJC-DCK

| | |
|---|---|
| DIAGNOSTIC DEVICES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TAIDOC TECHNOLOGY )<br>CORPORATION, )<br>)<br>Defendant. )<br>_____)<br>)<br>DIAGNOSTIC DEVICES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PHARMA SUPPLY, INC., NATIONAL )<br>HOME RESPIRATORY SERVICE, )<br>INC., d/b/a/ DIABETIC SUPPORT )<br>PROGRAM, and FRANK SUESS, )<br>)<br>Defendants. )<br>_____) | **ORDER** |

**THIS MATTER** is before the Court on the plaintiff's renewed motions to consolidate the above-captioned cases under Rule 42(a) of the Federal Rules of Civil Procedure (Case No. 3:08cv149, Doc No. 89; Case No. 3:08cv559, Doc. No. 100) and the parties' respective briefing for and against the motions. For the reasons stated below, the Court will **GRANT** the plaintiff's motions.

**I. BACKGROUND**

The plaintiff, Diagnostic Devices, Inc. ("DDI"), and the defendant in Case No. 3:08cv149, Pharma Supply, Inc. ("Pharma"), are distributors of blood glucose meters throughout the United

States, which diabetic patients use to test their blood glucose levels. Additionally, DDI sells disposable test strips, which are read by the meters, often through a proprietary technical process. The defendant in Case No. 3:08cv559, TaiDoc Technology Corporation ("Taidoc"), is a foreign corporation organized under the laws of China that has at one point manufactured the meters and test strips sold by both distributors.

In March 2006, DDI and TaiDoc entered into a formal sales agreement (the "TaiDoc Agreement") that made DDI the exclusive purchaser of "Prodigy" brand blood glucose testing products in the United States and certain foreign territories. DDI alleges that the Agreement also prohibited TaiDoc from selling any other blood glucose testing products for distribution in the United States, regardless of brand, without offering DDI the right of first refusal. At the time DDI signed the TaiDoc Agreement, DDI and Pharma had entered into a separate formal agreement (the "Pharma Agreement") making Pharma DDI's exclusive distributor of Prodigy brand meters in the United States.

In June or July 2006, however, the Pharma Agreement was terminated.[1] By September 2006, Pharma had entered into a contract with TaiDoc to distribute blood glucose meters in the United States under the "Advocate" brand name. Thus, through its agreement with TaiDoc, Pharma became one of DDI's competitors. DDI alleges that the Advocate and Prodigy meters are essentially identical, and the Advocate meters rely on confidential technical information shared between DDI and TaiDoc as part of a collaborative process to develop the Prodigy meters. DDI further alleges that use of the word "Duo" in the "Advocate Duo" line of products distributed by Pharma is an

---

[1] Pharma alleges that DDI unilaterally terminated the Pharma Agreement and began authorizing Pharma's competitors to distribute Prodigy brand products. DDI acknowledges that the Agreement was terminated but denies Pharma's allegation that the decision to terminate was made by DDI unilaterally.

intentional copying of DDI's "Prodigy Duo" trademark. DDI also alleges that, at some point after the Pharma Agreement was terminated, Pharma made defamatory statements to several of DDI's customers that DDI's Prodigy meters lacked approval by the FDA and, as a result, were potentially dangerous.

DDI filed suit against Pharma in Mecklenburg County Superior Court, later removed to federal court, alleging: (1) tortious interference with the Taidoc Agreement; (2) tortious interference with DDI's prospective customers; (3) unfair competition under state law; (4) defamation; and (5) slander. Pharma answered with counterclaims against DDI for breach of the Pharma Agreement and false advertising, based upon an allegation that DDI falsely marketed its Prodigy products as FDA-approved before they received necessary clearance from the FDA.

Soon after filing suit against Pharma, both DDI and TaiDoc ceased performance of the TaiDoc Agreement. DDI contends that TaiDoc unilaterally breached the agreement; TaiDoc contends that it ceased performance because DDI had breached the agreement by selling Prodigy brand glucose meters produced by other manufacturers and failing to pay for inventory. On December 18, 2008, TaiDoc sent a letter to the FDA urging it to investigate DDI for "sell[ing] fake test strips to its customers." (Doc. No. 14 at 13 ¶ 66). TaiDoc also repeated this statement in a letter it circulated to DDI's customers in January 2009. DDI then filed a separate complaint and motion for preliminary injunction against TaiDoc alleging: (1) libel; (2) breach of the Prodigy Agreement; (3) tortious interference with DDI's prospective customers; and (4) unfair competition under federal and state law, alleging infringement of various registered and unregistered trademarks, including the "Duo" portion of its "Prodigy Duo" trademark. TaiDoc answered with counterclaims for breach of the Prodigy Agreement and false advertising, alleging that on a February 6, 2009, DDI issued a press release falsely stating that it owned the Prodigy brand and its related intellectual property.

Additionally, TaiDoc seeks declaratory judgment that the "Advocate Duo" trademark used by TaiDoc does not create a likelihood of confusion in the marketplace with the "Duo" portion of DDI's "Prodigy Duo" trademark.[2] On March 20, 2009, the Court granted DDI's motion for a preliminary injunction with respect to its libel claim but denied the motion with respect to DDI's contract and trademark claims. TaiDoc was further ordered by the Court to circulate a retraction of its January 2009 letter.

DDI's first motion to consolidate these cases was denied by the Magistrate Judge, who found that both cases included unrelated claims, and that a consolidated trial would likely result in jury confusion, as certain companies or individuals would be witnesses in one context and parties in another. After the commencement of discovery, DDI has renewed its motion to consolidate, which has been fully briefed and is now ripe for the Court's review.

**II. LEGAL STANDARD**

>Rule 42(a) of the Federal Rules of Civil Procedure states:
>
>When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

"As the rule states, a motion to consolidate must meet the threshold requirement of involving 'a common question of law or fact.' If that threshold requirement is met, then whether to grant the motion becomes an issue of judicial discretion." Pariseau v. Anodyne Healthcare Mgmt., Inc., No. 3:04cv630, 2006 WL 325379, at *1 (W.D.N.C. Feb. 9, 2006) (citing Arnold v. E. Air Lines, 681

---

[2] In the alternative, TaiDoc claims that DDI's use of the "Prodigy Duo" trademark infringes upon TaiDoc's "Advocate Duo" trademark.

4

F.2d 186, 193 (4th Cir. 1982)). When exercising its discretion under Rule 42(a), district courts should

> weigh the risk of prejudice and possible confusion versus the possibility of inconsistent adjudication of common factual and legal issues, the burden on the parties, witnesses, and judicial resources by multiple lawsuits, the length of time required to try multiple suits versus a single suit, and the relative expense required for multiple suits versus a single suit.

In re Cree, Inc., 219 F.R.D. 369, 371 (M.D.N.C. 2003) (citing Arnold, 681 F.2d at 193).

## III. DISCUSSION

Neither TaiDoc nor Pharma dispute that there are common issues of law and fact to satisfy Rule 42(a)'s threshold requirement, but both defendants argue that the commonality of issues is so limited that consolidation would not significantly conserve judicial resources or ease the burden on non-party witnesses. The Court disagrees. Claims asserted in both lawsuits will require the Court to determine whether TaiDoc was contractually prohibited from entering into its distribution agreement with Pharma. Moreover, DDI's claims of unfair competition against both defendants raise the common issue of whether DDI has a protectable interest in the "Prodigy Duo" trademark, and if so, whether the "Advocate Duo" trademark, manufactured by TaiDoc and distributed by Pharma, creates a likelihood of confusion in the marketplace. The possibility of inconsistent outcomes on these issues alone militates against trying these cases separately. Cf. Williams v. Intier Automotive Interiors of Am., Inc., Nos. 7:09-1144 and 7:09-1960, 2009 WL 4874136, at *2 (D.S.C. Dec. 10, 2009) (finding no danger of inconsistent adjudications only upon a determination that no combination of possible judgments would be inconsistent). Although each lawsuit raises a number of individual issues, the time, judicial resources and witness burdens that would be saved by consolidation is substantial. And while the Court recognizes that consolidation of the individual claims asserted by and against DDI may increase the discovery burden on the defendants, the

preliminary discovery submitted to the Court indicates that TaiDoc and Pharma are already working together to coordinate their litigation of these claims.[3] Although, as TaiDoc argues, there is nothing nefarious about two defendants sharing information related to a common plaintiff, this evidence of coordination further weighs in favor of consolidation. See Signet Bank, N.A. v. Jacobsen, Civ. A. No. 92-2201, 1993 WL 30819, at *1 (D.D.C. Jan. 26, 1993).

These benefits are not overborne by risks of prejudice to the parties resulting from consolidation. TaiDoc and Pharma both argue that consolidated discovery will expose confidential business information and undermine their arms-length dealings between one another. The defendants' concerns of improper disclosure of confidential information produced through discovery are legitimate, but they are not likely to be cured by the maintenance of separate lawsuits. Neither TaiDoc nor Pharma could reach agreement with DDI over an appropriate protective order in their respective lawsuits, so even if kept separate, shared discovery between the lawsuits would remain an issue requiring the Court's intervention. Moreover, the defendants' contention that consolidation would somehow open the floodgates to improper disclosure of confidential information is unfounded. "Although consolidation 'is permitted as a matter of convenience and economy in administration, [it] . . . does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.'" Intown Properties Mgmt., Inc.

---

[3] Shortly after the Court granted in part DDI's motion for a preliminary injunction, to which Pharma was not a party, Pharma representative Steven Thuss sent and email to TaiDoc account manager Simon Lai telling him that "accepting this order of the judge without any fight is an admission of guilt by Taidoc." (Doc. No. 101-10 at 1). Oliver Suess, also of Pharma, sent a similar email to Lai stating that "your lawyers should be fighting this and not accept defeat on this subject." (Doc. No. 101-9 at 1). On March 24, 2009, Frank Suess, a named defendant in the Pharma lawsuit, emailed TaiDoc representatives alerting them of a recent DDI press release in which DDI claimed ownership of the intellectual property associated with the Prodigy brand. (Doc. No. 101-7 at 2). Instructing TaiDoc to forward the press release to its attorneys, the purpose of this email appears to be assisting TaiDoc in its counterclaim against DDI for false advertising. Frank Suess later responded in the same email thread that "we have to hit them from all sides." (Id. at 1).

v. Wheaton Van Lines, Inc., 271 F.3d 164, 168 (quoting Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97 (1933)) (alteration in original). The requests for protective orders made by each defendant in the individual lawsuits can be adequately addressed by the Court after consolidation.

Although TaiDoc argues that trying both cases together would create a substantial danger of confusing the jury, as parties are likely to be fact witnesses to one claim and defendants to another, this concern should not prevent consolidation. Discovery and pretrial motions may substantially narrow the issues for trial, greatly reducing the likelihood of jury confusion. And should such a narrowing of issues not occur, the parties may move at the appropriate time for separate trials pursuant to Rule 42(b).

Finally, the Court has considered the alternatives to consolidation proposed by Pharma and TaiDoc and finds them inadequate. Pharma recognizes the need to consolidate DDI's claims for breach of contract, and proposes to bifurcate the lawsuits so that consolidated discovery and trial may be held on DDI's contract claims only. If the Court were to implement this proposal, it would essentially create three lawsuits instead of two, and little if any time, expense or burden would be spared. TaiDoc, on the other hand, proposes to keep the cases separate but treat any "party" discovery between DDI, Pharma and TaiDoc as if the cases had been fully consolidated. Although this solution would save the parties time and expense, third party witnesses to both cases would receive no such benefit. The Court will not sacrifice convenience of non-party witnesses for that of the parties, all of whom have asserted claims or counterclaims in this case. See Gundle Lining Const. Corp. v. Fireman's Fund Ins. Co., 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) (granting a motion to transfer venue, holding that between parties and non-party witnesses, "[i]t is the convenience of non-party witnesses . . . that is the more important factor and is accorded greater

weight"). The Court thus concludes after a careful balancing of interests that consolidation of these cases is warranted pursuant to Rule 42(a).

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The plaintiff's renewed motions to consolidate the above-captioned cases (Case No. 3:08cv149, Doc. No. 89; Case No. 3:08cv559, Doc. No. 100) are **GRANTED**. The Clerk is directed to consolidate civil action number 3:08cv559 into the earlier-filed related civil action number 3:08cv149.

2. The scheduling order entered by the Court in the TaiDoc litigation (Case No. 3:08cv559, Doc. No. 78) is hereby **AMENDED** such that discovery deadlines, motions deadlines and trial are reset in conformity with the scheduling order entered by the Court in the Pharma litigation (Case No. 3:08cv149, Doc. No. 87).

**SO ORDERED**.

Signed: June 18, 2010

Robert J. Conrad, Jr.
Chief United States District Judge